Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2295 | **DATE** | 5/17/2002 |
| **CASE TITLE** | United States of America vs. United Network for Organ Sharing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The government petitions for summary enforcement of an Inspector General subpoena. The petition is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| ☐ | No notices required, advised in open court. | | | Document Number |
| ☐ | No notices required. | | number of notices | |
| ☐ | Notices mailed by judge's staff. | | MAY 2 0 2002 date docketed | |
| ☐ | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 25 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| ☐ | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 02 C 2295 |
| | ) | |
| UNITED NETWORK FOR ORGAN SHARING, | ) | |
| | ) | |
| Respondent. | ) | |

MAY 2 0 2002

## MEMORANDUM OPINION AND ORDER

The government petitions for summary enforcement of an Inspector General subpoena. The petition is granted.

In 1984 Congress enacted the National Organ and Transplant Act (NOTA). 42 U.S.C. §§ 273 *et seq*. That Act created the Organ Procurement and Transplantation Network (OPTN) "with the primary purpose of operating and monitoring an equitable system for allocating organs, maintaining a waiting list of potential recipients, matching potential recipients with donor organs, and increasing organ donation." The OPTN is operated by the United Network for Organ Sharing (UNOS) pursuant to a contract with the Department of Health and Human Services (HHS), and the statement of purpose is from that contract. UNOS has been delegated responsibilities, now codified in federal regulations, to monitor transplant hospitals for compliance with federal requirements and to report to the Secretary of HHS noncompliance with those requirements or indications of risk to the health of patients or to the public safety. Those are contractual responsibilities as well. In short, the system provides for some reliance upon the private contracting agency for enforcing federal requirements and standards.



On September 11, 2001, the Inspector General of HHS issued a subpoena to UNOS pursuant to a joint investigation by the Office of Inspector General (HHS OIG), the United States Attorney's Office and the Illinois Attorney General concerning the possible submission to the Medicare and Medicaid programs of false claims for payment by three UNOS member hospitals, including whether such false claims affected the mandated equitable distribution of livers available for transplant. UNOS, concerned about the impact of the disclosure of peer review materials upon the effectiveness of peer review programs, has resisted disclosure of those materials. When negotiations failed to resolve the disagreement, the government sought summary enforcement.

There is no dispute that HHS OIG has the statutory authority to investigate fraud, abuse and waste in the OPTN. UNOS and intervening hospitals rest their opposition upon the claimed adverse effect on the peer review process. If this were a discovery dispute in a lawsuit, their arguments might have some merit. Peer review is not protected by a federal privilege. Illinois, like most or all other states, has, however, enacted restrictions upon disclosure of peer review documents. Even though peer review documents are not protected by a federal privilege, "'[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981), quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976).

Pursuant to that concern the federal courts have developed balancing standards. When peer review materials are essential for proving a federal claim, such as discrimination in

university tenure decisions, University of Pennsylvania v. E.E.O.C., 493 U.S. 182 (1990), or antitrust violations, Memorial Hospital for McHenry County v. Shadur, *supra*, discovery is compelled. In a medical malpractice claim under the Federal Tort Claims Act, where the opinions of a peer review committee have little relevance and the federal claim rests upon state law, the state privilege may prevail, Weekoty v. United States, 30 F.Supp.2d 1343 (D. N.M. 1998); Mewborn v. Heckler, 101 F.R.D. 691 (D. D.C. 1984), but not always, Syposs v. United States, 63 F.Supp.2d 301 (W.D.N.Y. 1999). *See* United States v. QHG of Indiana, Inc., 1998 WL 1756728 (N.D. Ind. Oct. 8, 1998). State privileges attach to state claims pursuant to Rule 501, Fed.R.Evid. Freeman v. Fairman, 917 F.Supp. 586 (N.D. Ill. 1996).

But this is not a dispute about the scope of discovery in a lawsuit in which various factors may influence the discretionary judgment of the court. We are here asked to enforce an administrative subpoena, where the court's role is limited because of the important governmental interest in the expeditious investigation of possible unlawful activity. Federal Savings and Loan Insurance Corp. v. Bass Financial Corp., 552 F.Supp. 352 (N.D. Ill. 1982). While the Memorial Hospital for McHenry County v. Shadur balancing standard has been followed in governmental enforcement cases such as United States v. State of Illinois, 148 F.R.D. 587 (N.D. Ill. 1993),[1] we believe we are governed by the analysis set forth in United States v. Morton Salt Co., 338 U.S. 632, 652 (1950). "[L]aw-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest ... [I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."

---

[1] Even if we adopted that analysis the result would be the same. *See* United States v. QHG of Indiana, Inc., *supra*.

Perhaps if the reasonableness of the subpoena was at best marginal the policy considerations for protection of the peer review process, which no one disputes, might tip the scale. But here the inquiry is clearly within the authority of the agency, the demand is clear and the information sought is reasonably relevant. For example, peer review materials may well shed light on whether those receiving transplants are those entitled to those unfortunately scarce resources or whether some have been permitted to barge to the head of the line. We note, as well, that UNOS investigation is an integral part of the system enforcement procedure both by statute and contract. On December 18, 2001, UNOS wrote a letter to HHS OIG, recognizing the breadth of the OIG subpoena power, expressing its concerns about damage to the peer review process, and seeking modification of the subpoena. That was a wholly appropriate response, but the subsequent negotiations did not lead to the result UNOS wished. What modifications might be made, however, were within the province of HHS OIG, not within the province of this court.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

May 17, 2002.